Haynes, J.
In this case a motion has been made for an alternative writ of mandamus. That motion has been argued by counsel for the relator, and also for certain parties supposed to be interested in the question. The petition shows that the plaintiff, or the relator, was the sole executrix of the last will and testament of T. J. Maginnis, and proceeds to say that—
“Heretofore, to-wit, at the March term, A. D. 1882, of the district court of Lucas county, Ohio, there was pending in said court a certain civil acticn in which the First *625 National Bank cf Toledo was the plaintiff, and John Fitoh, this defendant, as such executrix, and others were defendants; and that in said court, and on the fourth day of April, A. D. 1882, and at said term of said court, a final judgment and order was therein made by said district court wherein and whereby, amongst other things, it was provided that this relator as such executrix, and certain other defendants therein, were the holders of liens upon certain real estate owned by the said John Fitch and by him held by title in fee. ”
Then it proceeds to describe certain property, and says that an order was made that—
“Said real estate should be sold as upon judgment and execution, and that the proceeds thereof should be applied in payment of said several liens in the order of their priority therein and thereby established, amongst which -liens was and is a lien then and thereon fixed and determined in favor of ths relator in the sum of $12,094.84.
“That in and by said final judgment and order, it was amongst other things provided that said cause should be remanded to the court of common pleas o.f Lucas county, Ohio for execution and for further proceedings, and also that if said John Fitch should for the period of six months from the time of the rendering of said final .judgment and making of said final order,fail to pay the said liens in favor of the relator and others, that then said real estate should be sold, and the proceeds applied in payment of said liens as hereinbefore stated.
“That said final judgment and order in favor of the relator has been ever since, and now is, in full force, and un-reversed, and wholly unsatisfied, and there is now due thereon from said John Fitch, the sum of $17,430.88.
“That no mandate in said cause embodying said final judgment and order, or any part thereof, from said distriot court was ever made out or sent to the court of common pleas by the clerk of said distriot court, during the existence of said distriot court, and no mandate was ever made out or S,ent to said court of common pleas or received by the clerk of said common pleas or journalized by the clerk of said court of oommon pleas, save and except as hereinafter set forth.
“That heretofore, to-wit on the —--day of June, A. D. 1887, the olerk cf the circuit court of said Lucas county, Ohio, caused a full and true copy of said judgment and final order to be made, and appended thereto a certificate that such copy was a true and full copy of the said final judg *626 ment and order of said district court in said cause, and signed the same as the clerk of said district court, and affixed thereto the seal of said district court, and dated certificate as of the fourth day of April, A. D. 1882, which said copy of said final judgment and order contained therein, amongst other things, the order remanding said cause to said common pleas court for execution, and for further proceedings.
“That thereupon said copy of said final judgment and order, so certified and authenticated as aforesaid, came into the hands of, and was received by the clerk of said court of common pleas on or about the — ■—day of June, A. D. 1887, and thereupon said clerk of the court of common pleas caused the same to be journalized in one of the journals of said court of common pleas, and the same now remains of record in said journal, but there is upon said journal no statement or memorandum, showing the date or. time at which said mandate was in fact so journalized.
“That on cr about the said — —day of June, 1887, when said clerk of said court of common pleas received said copy of said final judgment and order, he falsely endorsed, and file-marked on the back of the same, to the import and effect that said mandate was received and filed in said court of common pleas, on the fourth day of April, A. D. 1382, when in fact the same was received only on said-- day of June, A. D. 1887, and also thed and there falsely entered a memorandum which yet remains on the appearance docket, containing memoranda in said cause when the same was pending in said common pleas court, and before the appeal to said district court, to the effect and import that a mandate had been received on the fourth day of April, A. D. 1882, from the clerk of said district oourt.
“That since said month of June, 1887, and on or about the fourth day of November, A. D. 1887, the relator fiied her oertaiu written precipe with the clerk of the court of common pleas of Lucas county, Ohio, and in his office, demanding that he issue to the sheriff of Lucas county, Ohio, an order of sale in said cause, directing the sale of said real estate aforesaid, and the application cf the proceeds thereof in' accordance with said final order and judgment, which precipe the said clerk then and there refused, and has ever since' refused to obey, or to issue the order of sale thereby demanded.
“That after said clerk had so signified his refusal aforesaid, your relator filed her written motion in said court of common pleas in due form, asking the order of said court upon said clerk, that he issue the order of- sale demanded by her *627 said precipe, which motion afterward, tc-wit, on the fifth day of December, A. D. 1887, came on and was heard by said court, the aforesaid defendants then and there presiding and sitting in said court, and said motion was thereupon, after hearing thereof, by the judgment and order cf said court, refused and denied.
“That it was then and there the legal duty of said court, and of the said judges composing the same, to mate an order requiring and directing its said clerk to issue forthwith an order of sale to the sheriff of Luoas Gounty, Ohio, directing him to cause said real estate to be duly advertised and sold as upon judgment and execution, and tüe proceeds applied in accordance with the terms of said final judgment and order of the said district .court. ”
Then it sets out the names of the respective judges of the court,and avers that they are still in office. It further avers that lie is without remedy at law.
“Whereupon plaintiff prays that defendants be commanded forthwith to cause to be issued by the clerk of the court of common pleas of Lucas county, Ohio, an order of sale directed to the sheriff of said county, and commanding him to proceed to appraise, advertise and sell according to law said blocks five and seven (describing the property), and for the appropriation of the proceeds of such sale in accordance with said final orders and judgments of-said district court, and for other and -full relief.”
The case was very fully argued at the last term of this court, and there was quite a large citation of authorities. We have endeavored to give to the matter very full consideration.
The questions argued were, among others, very largely upon the effect of not issuing the mandate in any supposed proceedings in the court of common pleas, between April, 1882 and June, 1887 — cf course there were other questions involved.
It will be perceived that the prayer of this petition is that the court of common pleas be ordered to issue an order of sale upon the record of a judgment of the district court which is said to have been collected in the court of common pleas. It is averred here that the clerk of the court has falsely entered upon the appearance docket and put a file mark upon the back of a journal entry sent down from the district court that it was filed in 1888, when the fact was that it was filed in 1887. The judgment is of such a nature as that we understand, under the decisions of the supreme court, it does not become dormant, and if the plaintiff was entitled at all to his order of sale, he would be entitled to it as well *628 if it had been filed in 1882 as he would if it was filed in 1887 —'SO far as the life of the judgment is concerned, it is not a dormant judgment. Still the pleader has, for reasons satisfactory to himself, averred that the mandate was not filed until 1887, and that these endorsements have been falsely made, and he avers that since the date of the filing, in 1887, there has been no process issued upon that decree.
In the view that we take of the case, we shall not discuss a good many of the questions that have been raised here. There were some very important questions underlying this proceeding in some form. The question is as to how far the court — this court — may hear evidence for the purpose of showing that the file mark made upon this appearance docket and the file mark made upon the back of the mandate sent down to the court of common pleas is incorrect, is certainly a very important question, and one that there have been some decisions of the supreme court in relation to, as we understand the decisions.
The question also as to what the effect of the non-filing of the mandate in the court of ccmmon pleas, or spreading it upon the journal,may have upon the order of sale, in either view, whether issued in 1882 or 1887, is certainly a very important question, and one which we do not propose to dispose of the present time.
The statute with regard to mandamus, sec, 6742, Rev. Stat., provides that the writ can only be issued by the supreme court, or the district court; “and although it may require an inferior tribunal to exercise its judgment, or to proceed to the discharge of any of its functions, ■ it cannot control judicial discretion.”
The petition distinctly avers that the relator made motion in the court of common pleas, which was heard by that court, asking that court to cause an order of sale to be issued by the clerk of the court upon this decree or judgment. That motion is based upon a conclusion found in sec. 6707, Rev. Stat., which is:
“Any order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified, or reversed, as provided in this title”
And we suppose this motion is properly described as a summary application in an action after judgment. The clerk of the court had refused to issue upon a precipe of the party the final process of the court, and an application was *629 made to the court of common pleas to order him to issue the final process — a process without which a judgment would be practically, to her, a nullity. That, the court of common pleas refused to dc — lor what reason, is not set forth in the relator’s petition — and cf course need net be, as it is not material here: it is sufficient to know that the court, sitting as a court, on the motion made in' this action for the final process of the oourt to carry into effect the judgment found upon its journal, refused, after hearing, to make such order.
Now the question is — in the first instance, whether or not the party plaintiff here has an adequate remedy at law?
It seems to us beyond question that the party had a right tc take a petition in error to this court; and from this court to the supreme court, for the purpose of reviewing the acts of the ccurt of common pleas,and, if that court had erred in its refusal to grant the party a final procss, the action of the court would be reversed by the higher court, and this mandate then issued to that court to proceed according to law to carry the judgment into effect according to the decision cf the superior tribunal. We are very well acquainted with the opinion that that is the true remedy of a party— that h3 has an ádequate remedy at law, and that this will be in conformity with the mode pointed out by the statute for the review of the action of the court of common pleas, where it is alleged that it has committed an error in the hearing of any matters properly presented before it for its adjudication or judgment or order.
We have been cited to Hollister v. Judges, etc., 8 Ohio St., 201, as one affording authority to this court tc make this order. In that case the record disclosed that the eause had been heard in the district court of Lucas county, and, upon final hearing of the case a bill of exceptions had been taken to seme proceedings or ruling of the court, which had been signed by the judges of that court and filed with the clerk, and that after that the court had adjourned, and, in the absence of two of the judges of that court, and without ■consultation with them in any form,one of the judges of the court had erased from the bill of exceptions a material portion thereof; and the prayer of the writ was that the court order the judges tc restore to the bill of exceptions that part which had been erased. To that an answer was filed neither affirming nor denying the action of the court, but simply, by way of courtesy to the supreme court, suggesting that since the trial of that case two of the judges who sat in the ■ ease had gone out cf office and their terms expired; that *630 other judges had been elected to succeed them, and that at that time only one of the judges who then composed the ocurt was then holding office. It was further suggested that they were judges of the court of common pleas, and n'ot judges of the district court,and that therefore an order upon them would be invalid,and that they had no authoritj todo an act required by the supreme court. But the supreme court held that they were judges of the district court; that no matter that others had gone out and others had gone in, that still the judges of the court of common pleas were the judges of the district court,, and they were compelled to act upon their own information, or knowledge, or recollection of the facts of the case; that they might give notice to the parties and receive the evidence and make an order upon the parties te the case which would bind them; and thereupon they issued the peremptory crder prayed for by the' relator in his petition.
It will be perceived in this case that there is no prayer here that the court of common pleas be required tc crder their clerk to correct the record. The pleader proceeds upon the theory in his allegations that the facts in the case shewing that the mandate was not in fact actually filed in the office of the clerk of the common pleas until 1887, that that is sufficent to entitle him to an order for the issuance of the execution.
But the fact still remains, that by the file mark upon the back of the paper, and by the entries in the appearance docket,that the paper was filed in that court in April, 1882.
Section 4958, Rev. Stat., provides as follows:
“The clerk shall enter on the appearance docket, at the time of the commencement of an action or proceeding, the names of the parties'in full, with names of counsel,and forthwith index the case, direct and reverse,in the name of each plaintiff and defendant; he shall also enter, at the time it occurs, under the case so docketed, the issue of the summons, or other mesne process or crder, and the filing of each paper; and he shall record in full the return on such writ or order, with the date of its return to the court, which entry shall be evidence of such service.”
Section 4961, Rev. Stat., as follows:
“The clerk shall endorse upon every paper filed with him the date of the filing thereof; and upon every order for a provisional remedy, and upon every undertaking given under' the same, the date of its return to his office. ”
It is said in the petition that the clerk when he -filed — journalized — this judgment which came down,failed to state *631 on the journal tho date of the filing. But it may be suggested that we find nowhere any statute requiring him to do so; indeed, it is said in an early case under the old practice, that the proper practice would be for him to state on the journal that he received at suoh a time the mandate which he copied cn the record; and so, so far as it is contemplated by the statute, it would seem that the record evidence of the filing of the papers is to be found upon the appearance docket and by the file mark upon the back cf the papers, and, by that datum, there is no proof here of the record being corrected in any manner, and we are called upon to order a court to do that which they have decided, after a full hearing, they would not do. Of the correctness of that decision we do not know. The presumption is that they decided it upon the law and the facts w'hich were presented to them. The petition does not aver that that was the evidence upon which it was heard there,and all the evidence. In Hollister v. Judges, supra, it was deeided by a majority of the court, Judge’ Swan dissenting, but wre feel very sure in cur own mind, that where the petition sets forth that there has been a hearing upon this motion and the action to the oourt upon the faots, that the only remedy is for the party to take the petition to the higher courts, and, for that reason, the motion for an alternative writ will be refused. We do this with less reluctance because,upon refusal to grant the alternative writ, the party has a.right to proceed immediately to the supreme court and apply for an alternative writ, and without great difficulty, can thus bring speedily this writ before the very highest tribunal in the state, whose decision will be binding as to relator’s right to have the alternative writ.